# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SUNTUITY SOLAR LIMITED LIABILITY COMPANY,<br><br>       Plaintiff,<br><br>vs.<br><br>SOLARE POWER, LLC,<br><br>       Defendant. | Civil Action: |

## VERIFIED COMPLAINT

Plaintiff Suntuity Solar Limited Liability Company ("Suntuity" or "Plaintiff") by way of verified complaint against Defendant Solare Power, LLC ("Solare" or "Defendant") states as follows:

## THE PARTIES

1. Suntuity is a New Jersey corporation with its principal place of business located at 2137 NJ-35, Holmdel, NJ 07733. Suntuity and its affiliates sell, lease, and install electricity from residential solar photovoltaic systems.

2. Solare is a Texas limited liability company with its principal place of business located at 4518 Webb Rd, Anderson, CA 96007. Solare is in the business of locating potential solar electricity customer and installing the necessary solar energy equipment and materials.

**JURISDICTION AND VENUE**

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332, because it concerns citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00 and/or seeks non-monetary relief.

4. Venue is appropriate because the jurisdiction clause contract between the parties provides for exclusive jurisdiction in the federal court for the district of New Jersey.

**FACTS**

5. On or about October 4, 2021, Suntuity and Solare entered into a Company Agreement (the "Company Agreement") under which Suntuity acquired a 1% ownership interest in Solare.

6. Contemporaneously with the Company Agreement, the parties entered into a management agreement (the "Management Agreement", attached hereto as Exhibit A), under which Suntuity would manage and control the monies from solar energy projects ("Projects"), and would perform "Management Services", including:

> (a)     (a) purchasing goods and materials for the projects through vendors selected by Suntuity; (b) maintaining Solare's operating accounts for all projects and deals generated by Suntuity; (c) receiving, disbursing, maintaining, and accounting for the proceeds of any funding Solare and/or Suntuity receives from a project financier on Suntuity-sourced projects; and (d) such other services as Solare and Suntuity may deem necessary or appropriate.

7. As part of these Management Services, Solare was required "to cooperate with Suntuity and provide Suntuity with access to Solare's records, data, bank accounts, and credit accounts."

8.     In conjunction with these agreements, the parties also entered into a Vertically Integrated Sales Engine and Installation Agreement (the "VISE Agreement"), under which Solare would serve as both a Dealer and Installer for Suntuity Projects.[1]

9.     The VISE Agreement enabled Solare to access Suntuity's proprietary internal software and marketing materials, as well as provided Solare with access to project financing companies exclusively for the purpose of locating and completing Projects and to utilize Suntuity's vendors and contacts for favorable pricing and materials for the Projects.

10.    The VISE Agreement further contained a non-solicitation provision which prohibited Solare from, among other things, "interfering with or disrupting, or attempting to interfere with or disrupt, the relationship, contractual or otherwise, between Suntuity or any of its employees, customers, contractors, vendors, or consultants."

11.    Recognizing the necessity of the provisions of the Management Agreement to the parties' overall business arrangement, the Management Agreement explicitly allowed either party to seek injunctive relief for a breach:

> (a)    <u>Injunctive Relief.</u> The Parties further agree that given the nature of the activities contemplated to be performed by Solare and Suntuity, including, but not limited to, the nature of the necessary labor, materials, and equipment, that, in the event a dispute between them arises, including over whether one of them is entitled to move or otherwise distribute monies received from work which was sourced by Suntuity and performed by Solare, either party shall be entitled to seek injunctive relief through any court having jurisdiction. In such a situation, the Parties agree that money damages would be inadequate and irreparable injury to the Parties will occur. The Parties further agree that they have had the opportunity to fully consider the nature of the transaction between Solare and Suntuity, and, having so considered it, agree that the rights concerning injunctive relief are not mere recitations but represent the Parties' good faith belief

---

[1] As part of its business, Suntuity contracts with "Dealers", which are persons or entities that provide origination and closing of residential solar installation projects and bring the potential deals to Suntuity. Suntuity also contracts with "Installers", which are individuals or companies that specialize in the installation of solar energy systems and projects.

regarding the damages and injuries which may be caused to each of them should a dispute arise.

12. In or around, August 2022, Solare ordered $515,184.02 worth of solar energy materials through Suntuity's system at a discounted price.

13. These materials were ordered (unbeknownst to Suntuity at that time) for what Solare claimed to be its own solar installation projects.

14. When Suntuity questioned Solare about these projects, Solare refused to provide Suntuity with access to its books and records under the Management Agreement so that Suntuity would be able to determine for itself whether Solare improperly booked the projects as its own.

15. On or about September 16, 2022, Solare cut off Suntuity's access to one of Solare/Suntuity's largest finance partner portals.

16. Suntuity made numerous formal and informal requests for Solare to reenable access to its finance portal, but on October 5, 2022 and again on October 14, 2022, Solare explicitly refused to reenable access.

17. Without this access, Suntuity is unable to perform its duties or exercise its rights under the Management Agreement or the VISE Agreement. For example, Suntuity is unable to determine if Solare is (1) improperly using Suntuity's proprietary software and intellectual property, (2) soliciting Suntuity's Dealers, vendors, and/or consultants, or (3) irreparably damaging its business relationships and reputation.

18. As such, injunctive relief is necessary to preserve the status quo by reenabling Suntuity's access to Solare's books and records.

## COUNT I

### Breach of Contract

19. Plaintiff repeats and incorporates the allegations of the preceding paragraphs as if fully set forth herein.

20. Suntuity has complied or substantially complied with its obligations under the Management Agreement.

21. Solare has breached the Agreement by, among other things, cutting off Suntuity's access to Solare's records, data, bank accounts, and credit accounts.

22. Solare's breach of contract is continuing and has directly and proximately resulted in and/or will directly and proximately result in irreparable harm to Plaintiff, including the loss of contracts, contract renewals, damage to business reputation and good will, and other damages.

## COUNT II

### Breach of the Covenant of Good Faith and Fair Dealing

23. Plaintiff repeats and incorporates the allegations of the preceding paragraphs as if fully set forth herein.

24. All contracts contain an implied covenant of good faith and fair dealing.

25. For weeks, Solare failed and refused to respond to Suntuity's requests for access to its books and records.

26. Upon information and belief, these actions, made in bad faith, were specifically designed to deny Suntuity's benefits of the Management Agreement while maintaining Solare's benefits, including its access to Suntuity's proprietary software, contacts, and favorable pricing for materials.

27. For the reasons set forth above, Solare has breached the covenant of good faith and fair dealing.

28.     Solare's breach of the covenant of good faith and fair dealing is continuing and has directly and proximately resulted in and/or will directly and proximately result in damage to Plaintiff, including the loss of contracts, contract renewals, damage to business reputation and good will, and other damages.

**WHEREFORE**, Plaintiff Suntuity Solar Limited Liability Company demands judgment against Defendant Solar Power, LLC for any or all of the following relief:

1.      For a preliminary injunction and permanent injunction requiring Defendant Solare to reenable access to its books and records;

2.      for compensatory damages;

3.      for punitive damages;

4.      for all damages and attorneys' fees available under all applicable statutes;

5.      for costs and attorney's fees;

6.      and/or for such other relief as the Court deems just and equitable.

                                                ARCHER & GREINER
                                                A Professional Corporation
                                                Attorneys for Plaintiff
                                                Suntuity Solar Limited Liability Company

                                                By: */s Nicholas Franchetti*
                                                NICHOLAS FRANCHETTI, ESQUIRE

Dated: October 17, 2022

## VERIFICATION

I, Dan Javan, verify as follows:

1. I am the President and CEO of Suntuity Solar Limited Liability Company, the Plaintiff in the foregoing Complaint.
2. I have personal knowledge of the facts set forth in this Verified Complaint.
3. The facts set forth in the Verified Complaint are true to the best of my knowledge and belief.

I hereby verify under penalty of perjury that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

*[signature]*

Dated: October 17, 2022.

225832894v3

# EXHIBIT A

# MANAGEMENT AGREEMENT BETWEEN SOLARE POWER, LLC AND SUNTUITY SOLAR LIMITED LIABILITY COMPANY

THIS MANAGEMENT AGREEMENT between Solare Power, LLC, a Texas Limited Liability Company ("Solare"), on the one hand, and Suntuity Solar Limited Liability Company, a New Jersey Limited Liability Company ("Suntuity") (singularly as "Party" and collectively as "Parties"), on the other hand, is entered into as of the date set forth on the signature page of this agreement ("Management Agreement").

## RECITALS

A. Whereas, on October 4, 2021, Solare amended and restated its "Company Agreement," which is its operating agreement;

B. Whereas, pursuant to Solare's amendment to the Company Agreement, Suntuity received a one percent Class B membership interest in Solare ("Membership Interest");

C. Whereas, Solare and Suntuity desire to enter into this Management Agreement in order to memorialize the terms and conditions related to the management of projects sourced by Suntuity;

D. NOW, THEREFORE, in consideration of the mutual covenants contained herein, the Parties hereto, intending to be legally bound, subject only to the conditions set forth herein, hereby agree as follows:

## AGREEMENT

1. <u>Incorporation.</u>  The recitals above in paragraphs A through D are incorporated herein and made part of this Agreement.

2. <u>Management Services</u>. Pursuant to and subject to the terms of this Agreement, the Solare appoints Suntuity as a Manager to manage and control the monies received from work which Suntuity sources and Solare performs. The management services include the following: (a) purchasing goods and materials for the projects through vendors selected by Suntuity; (b) maintaining Solare's operating accounts for all projects and deals generated by Suntuity; (c) receiving, disbursing, maintaining, and accounting for the proceeds of any funding Solare and/or Suntuity receives from a project financier on Suntuity-sourced projects; and (d) such other services as Solare and Suntuity may deem necessary or appropriate (collectively, the "Services"). Solare hereby agrees that Suntuity will devote such time and efforts to the performance of the Services contemplated hereby as Suntuity deems reasonably necessary or appropriate; provided, however, that no minimum number of hours is required to be devoted by Suntuity on a weekly, monthly, annual or other basis.  In providing services to Solare pursuant to this Agreement, Suntuity

will act as an independent contractor and it is expressly understood and agreed that, but subject to the Membership Interest conferred in the Company Agreement, this Agreement is not intended to create, and does not create, any partnership, agency, joint venture or similar relationship and that no party has the right or ability to contract for or on behalf of any other party or to effect any transaction for the account of any other party, without the other party's prior consent. Under no circumstance shall Solare be entitled to move or make a distribution of the monies received from work that Suntuity sources and Solare performs without Suntuity's written consent. Solare also agrees to cooperate with Suntuity and provide Suntuity with access to Solare's records, data, bank accounts, and credit accounts.

3. <u>Cash and Credit; Procurement Costs.</u>  Suntuity shall receive all operational cash and credit and shall bear all procurement costs for the work that the Suntuity sources and the Solare performs.  Suntuity shall not receive or be allocated any operational cash or credit from Solare and shall not bear any procurement costs for the work that Solare sources and which Solare performs.

4. <u>Fixed Fee</u>. During the Term (as defined below), Suntuity shall contribute eight thousand dollars ($8,000.00) per month towards the primary functions and expenses of Solare.

5. <u>Term</u>. This Agreement shall commence on the Effective Date and shall continue in effect until cancelled by written consent of the Parties or a Termination Event (as defined below).

6. <u>Termination Event; Continuation of Work.</u>  Should an event occur which results in the return of Suntuity's Membership Interest, ownership interest, and percentage interest back to Solare, for whatever reason, the Parties agree that the work then under contract shall be completed by Solare pursuant to the terms of this Management Agreement and the then-operable Company Agreement (a "Termination Event").  Regardless of the reason or cause of Suntuity transferring, selling, or otherwise returning its Membership Interest to Solare, Suntuity shall (i) continue to have the right to fully manage and control the monies received from financiers for work that Suntuity sources and Solare performs, (ii) have the right to fully manage and control the monies received from financiers for work that Solare sources for Suntuity; (iii) have the right to fully manage and assign all projects sourced for Suntuity; (iv) continue remitting payment to all contractors and/or subcontractors for work or services Suntuity sourced to such contractors or subcontractors, and (v) be entitled to its compensation for the work that it sourced and was performed or to be performed by Solare pursuant to the terms of the Company Agreement, this Management Agreement, and any other written agreement between the Parties concerning Suntuity's compensation. A Termination Event shall be deemed to have occurred immediately: (a) upon the failure of Solare to comply with, keep, observe, or perform any of its obligations,

agreements or undertakings under this Agreement, at Suntuity's sole election to terminate; (b) by mutual written agreement of the Parties; (c) a filing under the United States Bankruptcy Code for Solare or Suntuity.

7. <u>Injunctive Relief.</u>  The Parties further agree that given the nature of the activities contemplated to be performed by Solare and Suntuity, including, but not limited to, the nature of the necessary labor, materials, and equipment, that, in the event a dispute between them arises, including over whether one of them is entitled to move or otherwise distribute monies received from work which was sourced by Suntuity and performed by Solare, either party shall be entitled to seek injunctive relief through any court having jurisdiction.  In such a situation, the Parties agree that money damages would be inadequate and irreparable injury to the Parties will occur.  The Parties further agree that they have had the opportunity to fully consider the nature of the transaction between Solare and Suntuity, and, having so considered it, agree that the rights concerning injunctive relief are not mere recitations but represent the Parties' good faith belief regarding the damages and injuries which may be caused to each of them should a dispute arise.

8. <u>Indemnification.</u>  With regard to any work sourced by Suntuity and performed or to be performed by Solare, the Parties agree to mutually defend, indemnify and hold harmless one another and/or any of their respective agents or employees in connection with a proceeding in which either is involved if, and to the extent, Texas law requires that a limited liability company indemnify the other in connection with the proceeding. With regard to any work sourced by Solare, Solare agrees to defend, indemnify and hold harmless Suntuity and/or its agents or employees in connection with a proceeding in which either is involved if, and to the fullest extent, Texas law requires that a limited liability company indemnify the other in connection with the proceeding.

9. <u>Representations and Warranties</u>. Solare hereby represents and warrants that: (i) it has the legal right, power, authority and capacity to enter into, execute, deliver and perform this Agreement; (ii) this Agreement has been duly executed and delivered by Solare and constitutes the legal, valid and binding obligation of the Solare, enforceable against Solare in accordance with its terms; (iii) the execution, delivery and performance of this Agreement by Solare, and the consummation of the transactions contemplated by this Agreement, will not require Solare to obtain any consent, approval, authorization or permit of, or to make any filing with or notification to, any governmental authority; and (iv) neither the execution and delivery by Solare of this Agreement, nor the consummation or performance of the transactions contemplated by this Agreement, nor compliance by Solare with any of the provisions in this Agreement, will, directly or indirectly contravene, conflict with or result in a breach or violation of (A) any provision of Solare's organizational documents; or (B) any resolution adopted by Solare's directors or shareholders, as applicable.

10. <u>Assignment</u>. The Parties shall not assign any rights or obligations under this Agreement with the prior written consent of the other Party.

11. <u>Governing Law; Jurisdiction</u>. This Agreement shall be governed and construed in accordance with the laws of the State of New Jersey, without regard to the conflicts of law principles thereof. Any action or proceeding against the parties relating in any way to this Agreement may be brought and enforced exclusively in the United States District Court for the District of New Jersey, and the Parties irrevocably submit to the jurisdiction of such court in respect of any such action or proceeding.

12. <u>Waiver of Jury Trial</u>. Each of the Parties hereto hereby waives to the fullest extent permitted by applicable law any right it may have to a trial by jury with respect to any litigation directly or indirectly arising out of, under or in connection with this agreement or any of the transactions contemplated hereby.

13. <u>Severability</u>.  If in any proceedings a court will refuse to enforce any provision of this Agreement, then such unenforceable provision will be deemed eliminated from this Agreement for the purpose of such proceedings to the extent necessary to permit the remaining provisions to be enforced.  To the full extent, however, that the provisions of any applicable law may be waived, they are hereby waived to the end that this Agreement be deemed to be valid and binding agreement enforceable in accordance with its terms, and in the event that any provision hereof will be found to be invalid or unenforceable, such provision will be construed by limiting it so as to be valid and enforceable to the maximum extent consistent with and possible under applicable law.

14. <u>Drafting</u>. The Parties have carefully reviewed and negotiated the terms of this Agreement and the Parties hereby acknowledge and agree that they have had a full and fair opportunity to review and negotiate the Agreement with the advice of their respective counsel.  Therefore, there shall be no presumption in favor of the non-drafting Party.

15. <u>Counterparts</u>. This Agreement may be executed in one or more counterparts (including, without limitation, via electronic exchange of "PDF" copies exchanged via Docusign, AdobeSign, or HelloSign), which, taken together, shall constitute one and the same original document.

-- SIGNATURE PAGE TO FOLLOW --

IN WITNESS WHEREOF, the parties have executed or caused to be executed this Amended and Restated Company Agreement and do each hereby represent and warrant that their respective signatory, whose signature appears below, has been and is, on the date of this Agreement, duly authorized to execute this Agreement.

Dated: 10/7/2021 _____

*DocuSigned by: Nicole Tomasin — 3B41FC361DEC47D...*
Signature of Nicole Santos Tomasin

*DocuSigned by: Jason Nicholson — 42C270E90CB54E4...*
Signature of Jason Nicholson

*DocuSigned by: Melinda Doering — 5E47C259408F443...*
Signature of Melinda Doering

*DocuSigned by: Kirk Ramage — 23C9BBC8CA2A467...*
Signature of Kirk Ramage

*DocuSigned by: Shadaan Javan — 7E14C0AF900B468...*
Signature of Shadaan Javan on behalf of Suntuity Solar Limited Liability Company

Page 5 of 5